### SUSAN MONTGOMERY *v.* HORACE HANDY.

1. COMMON INCLOSURE. *Liability of one common owner for turning in cattle.   Sec. 984, Code 1880.*

   Under ¿ 984 of the Code of 1880, which provides that, "Every owner of cattle," etc., "shall be liable for all injuries and trespasses committed by such animals by breaking into the inclosure or grounds of another inclosed by a lawful fence, or running at large in a common inclosure within which more than one person is cultivating land without the consent of all such persons," if one of several persons cultivating lands within a common inclosure turns his cattle upon his land without the consent of the others protected by the common fence, he is liable for all damages which may result to such others by his cattle going upon their lands, notwithstanding he may have first surrounded his own land on three sides by a lawful fence, leaving only that side next to his immediate neighbor uninclosed.

2. SAME. *Liability of one person for damage done by cattle of another.   Word " owner " construed.*

   And if the trespasser in such case voluntarily permits the cattle of a stranger to mingle with his on his own land and to go thence and participate in the trespass upon his neighbors' land, he is responsible as well for the damage inflicted by the stranger's cattle as by his own.   He may be regarded as the owner, *pro hac vice,* of the stranger's cattle within the meaning of the statute, which limits the liability to the "owner" of the trespassing stock.

APPEAL from the Circuit Court of Madison County.

HON. T. J. WHARTON, Judge.

A sufficient statement of the case will be found in the opinion of the court.

*G. W. Thomas,* for the appellant.

The first instruction asked for the defendant and granted by the court is erroneous, for it misleads the jury into the belief that they

cannot render a verdict against the defendant for the damage done by stock not actually owned by Handy. This we conceive is not the law. Place this literal construction upon any penal statute, and no criminal could be convicted, and no person could be made liable for a trespass. We do not deny the general proposition that " penal statutes must be construed strictly," but we do insist that to make only the actual owner of stock liable for a trespass of this kind would be to make the section of the code under which this case is brought a dead letter.

" Penal statutes *must* be strictly construed." To understand what this proposition of law means, examine the cases of *Merrill* v. *Mechior*, 1 George 516; *Foot* v. *Van Zant*, 5 Ib. 40; and *Beall* v. *Shattuck*, 53 Miss. 358.

The second instruction asked for by the defendant and granted by the court is, if possible, more erroneous than the first. It charges the jury upon the weight of evidence as to whether there was a common inclosure or not, as shown by the testimony, and tells them in so many words that " the evidence in this case does not show that Handy and Montgomery had a common inclosure under the meaning of the statute, and so the jury will find for the defendant." Admit that there is such a thing as a common inclosure; admit, further, that the evidence in this cause tends even to show that there might have been a common inclosure as claimed in this case, and it is beyond the power of the court, under all the authorities upon the subject, to charge the jury that the evidence is insufficient. See *Garnett* v. *Kirkham*, 4 G. 389; *Perry* v. *Clark*, 5 H. 495; *Frizell* v. *White*, 5 C. 198; and *Whitney* v. *Cook*, 53 Miss. 551.

*R. C. Smith*, on the same side, argued the case orally.

*Calhoon & Green*, for the appellee.

By examining the bill of exceptions, in connection with the diagram thereon, it will plainly appear that no part of § 984, Code 1880, has any pertinency to the facts, and that defendant below, appellee here, was clearly entitled to the verdict he received.

It then appears that there was no breaking into " the inclosure of another inclosed by a lawful fence," and there was no such

breaking into by animals "running at large in a common inclosure."

There was no "common inclosure" here. Handy had inclosed himself on three sides at his own expense, as all the evidence agrees, except toward Ayres, into whose land the cattle got (and from thence to Montgomery's), and Ayers had built an insufficient fence on Handy's fourth side. Over this fence the cattle got.

There being no element of a "common inclosure," even if there was error in the instruction on this point, the verdict was right, and the court right in telling the jury to find for defendant.

*S. S. Calhoon,* of counsel for appellee, made an oral argument.

CHALMERS, J., delivered the opinion of the court.

Plaintiff and defendant, and also one Ayers, made their several crops under one fence within a common inclosure. In the fall of the year, and before their crops were gathered, the defendant, Handy, without consultation with his neighbors, inclosed his own crop on three sides, leaving the fourth side to be completed by his immediate neighbor, Ayers, who already had a very insufficient fence between the land of himself and that of Ayers. Upon his own land Handy's cattle were already located, and he permitted those of his brother also to be driven thereon. Both his own and his brother's cattle readily passed over the insufficient fence into the land of Ayers, and thence, of course, into that of plaintiff, Montgomery, and greatly damaged her crop.

Handy resists all liability, upon the ground that from the date of the erection of the fence by him a common inclosure did not exist between the parties within the meaning of § 984 of the Code of 1880, and that if this be not true, he, at least, is not liable for the injury done by his brother's stock, since the section referred to makes only the owner of the stock responsible, which he, as to these cattle, was not.

Neither position is sound, though the court, by its instructions, adopted both and virtually told the jury to find a verdict for the defendant, who accordingly had verdict and judgment.

He who undertakes to segregate his own land, and to convert a

joint holding into a several one, must entirely complete the undertaking, and until he has done so by completely building his fence on all sides it remains a common inclosure. A lawful fence built on three sides only is no fence at all within the eyes of the law. In this case Handy would have been responsible to Ayers for all damage, save for a special agreement, inflicted by his stock, and equally so to the plaintiff, whose land, wholly unprotected, adjoined the latter.

He was equally responsible for damage inflicted by the stock of his brother, which, by permission, had been mingled with his own. It is true that the statute speaks of the "owner" only as being responsible, and it is true also that penal statutes are to be strictly construed. But that the defendant was liable for the damage inflicted by all the stock voluntarily mingled with his own seems too plain for argument. If he was not, he would have been equally acquitted for damage done by a hired animal, though the hiring was for the whole year, since in either case it might have been argued that he was not the "owner" of the animal. In either case he was the "owner" *pro hac vice*, and must be so treated.

*Reversed and remanded.*